IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

WILLIE WELLS, III                                                              PETITIONER
ADC #100985

V.                                       NO. 5:07cv00250 JWC

LARRY NORRIS, Director,                                              RESPONDENT
Arkansas Department of Correction

<u>MEMORANDUM OPINION AND ORDER</u>

Willie Wells, III, an Arkansas Department of Correction (ADC) inmate, brings this
28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 2).  He does not attack his
underlying criminal conviction or sentence; instead, he challenges a prison disciplinary
decision.  Respondent filed a response and supporting exhibits (doc. 8, 9).  For the
reasons that follow, the petition must be dismissed.[1]


I.

In July 2007, Petitioner was housed in the ADC's Benton Work Release Center and
he was employed as a work release inmate at Capitol Equipment.  On July 30, 2007,
Antoinette S. Bradley, an ADC work release supervisor, wrote a major disciplinary report
charging Petitioner with violations of ADC Rule 02-5 (unauthorized use of mail or
telephone, including passing unauthorized messages), Rule 02-6 (unauthorized contact
with the public while on work release), Rule 12-1 (failure to obey staff orders), and Rule 17-
1 (any act defined as a felony or misdemeanor by the state of Arkansas).  According to the
charge and supporting documentation, Ms. Bradley received a call from the Saline County
Circuit Clerk's office stating that Petitioner had called the clerk's office on Friday, July 27,

---

[1]The parties have consented to the jurisdiction of the Magistrate Judge (doc. 14).

and that on Monday, July 30, a man wearing a Capitol Equipment uniform bearing the name "Terry" brought to the clerk's office a package of papers from Petitioner.   One of the papers purported to bear the signature of ADC bookkeeper Martha Ray, who reported that the signature was not hers.   Petitioner was interviewed and said he had mailed papers to the circuit clerk's office from the ADC's Benton Unit.   Upon further questioning, however, he admitted that he had someone from Capital Equipment take paperwork to the clerk's office for him.   The charge stated that Petitioner had been advised of the work release rules and regulations.   (Resp't Ex. A [doc. 9-2].)

At a disciplinary hearing on August 9, 2007, Petitioner said he sent documents to Ms. Ray to deduct money from his account, he did not have access to a phone to call anyone at the circuit clerk's office, and he had asked someone to deliver papers to the clerk's office for him but did not know it was not allowed.   The hearing officer found Petitioner guilty of violating Rules 02-5 and 02-6, but not-guilty of the remaining charges. As punishment, Petitioner received thirty days of suspended recreation, commissary, phone and visitation privileges, and he was reduced from Class I-C to Class III.   (Resp't Ex. B [doc. 9-3].)   He appealed to the warden, then to the disciplinary hearing administrator, then to the ADC director, with the disciplinary decision being affirmed at all levels.   (Resp't Ex. C [doc. 9-4].)

In this federal habeas action, Petitioner alleges he was denied due process and equal protection in violation of the Fourteenth Amendment, and was subjected to deliberate indifference in violation of the Eighth Amendment.   Specifically, he alleges: (1) ADC regulations regarding disciplinaries were violated because the disciplinary expired before a hearing was held, he was not provided with an extension form until after the disciplinary had expired, and the form had errors on it and the date was marked through; (2) one hour

a day of recreation is mandatory; and (3) the notifying officer refused to collect a witness statement from Petitioner's supervisor at Capitol Equipment.  He says that, as a result of the disciplinary charge, he was transferred from the Benton Work Release Center to the ADC's Wrightsville Unit.  As relief, he seeks monetary damages, immediate restoration to Class I-C status, and reinstatement in the work release program.

Respondent argues that this petition should be dismissed for three reasons.  First, he contends that, because Petitioner does not challenge the fact or duration of his ADC confinement, his current claims are simply challenges to the conditions of that confinement, cognizable only in a 42 U.S.C. § 1983 civil rights action.  Respondent further argues that Petitioner's claims should be dismissed without prejudice because he has failed to exhaust his state remedies by seeking judicial review of the disciplinary decision in state court.  Finally, Respondent asserts that Petitioner's due process claims lack substantive merit.

II.

"Federal law opens two main avenues to relief on complaints related to imprisonment:" a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, and a civil rights complaint pursuant to 42 U.S.C. § 1983.  *Muhammad v. Close*, 540 U.S. 749, 750 (2004).  The essence of habeas corpus "is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  Habeas is thus the exclusive remedy when an attack "goes directly to the constitutionality of [a prisoner's] physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration."  *Id.* at 489.  Where the length of an inmate's confinement is affected by the loss of good-time credits as a result of an adverse prison disciplinary

decision, federal habeas is the exclusive federal forum for claims challenging those disciplinary decisions.  *Portley-el v. Brill*, 288 F.3d 1063, 1066 (8th Cir. 2002).

A civil rights complaint under § 1983, on the other hand, "is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody."  *Preiser*, 411 U.S. at 499.  Where no good-time credits were eliminated by a prison disciplinary determination, that decision has no effect on the term of incarceration ordered by the prisoner's original criminal judgment of conviction and a prisoner challenging the decision "raise[s] no claim on which habeas relief could have been granted on any recognized theory."  *Muhammad*, 540 U.S. at 754-55.

If a habeas petitioner is not challenging the validity of his conviction or sentence or the length of his state custody, a habeas court lacks the power or subject matter jurisdiction to grant relief.  *Khaimov v. Crist*, 297 F.3d 783, 785-86 (8th Cir. 2002) (finding that habeas petitioner's claims regarding prison mail and segregation were improperly brought under § 2254 because they were not alleged to have illegally extended his period of confinement); *Kruger v. Erickson*, 77 F.3d 1071, 1073-74 (8th Cir. 1996) (dismissing habeas petition for lack of subject matter jurisdiction where prisoner did not "make any colorable allegation that his underlying conviction is invalid or that he is otherwise being denied his freedom from incarceration").

Nothing in the record suggests that Petitioner's claims, even if successful, would result in any change in the duration of his term of confinement in the ADC.  This Court thus lacks subject matter jurisdiction to consider the merits of his claims in a federal habeas action.

Additionally, a careful reading of Petitioner's filings shows the thrust of his claim to be violations of certain ADC policies regarding disciplinaries.  A federal court may issue a

writ of habeas corpus only for a violation of the Constitution, laws or treaties of the United States. 28 U.S.C. §§ 2241(c), 2254(a). There is no federal constitutional interest in having state officers follow state law or prison officials follow prison regulations. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). Therefore, regardless of whether any ADC rules or regulations have been violated, this Court is limited to determining whether a federal violation has occurred.

The Fourteenth Amendment to the United States Constitution provides in part that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Protected liberty interests may arise from the Due Process Clause itself or from an expectation or interest created by state laws or policies. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

The Due Process Clause does not protect prisoners from every adverse change in their confinement and does not, itself, create a protected liberty interest in any particular prisoner classification or eligibility for rehabilitative programs, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); or in any particular job assignment, *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002). Although an inmate has no federal due process right to participate in a work release program, he may, however, have a protectible liberty interest in *remaining* in a program, depending on the nature of the specific work release program. Where a work release participant has been released from institutional life to reside and work in the community, the participant's status is similar to that of a parolee, giving rise to a liberty interest and the necessity of due process protections before being deprived of that interest. *Edwards v. Lockhart*, 908 F.2d 299, 300-03 (8th Cir. 1990). This is distinguishable from the situation here, where an inmate continues to reside in an institutional setting but is released into the community each day to participate in employment. *Id.* at 303; *Callendar*

*v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 668 (8th Cir. 1996).  Therefore, Petitioner's removal from his work release job implicates no liberty interest inherent in the Due Process Clause itself.

Liberty interests arising from state law are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or to actions which "inevitably affect the duration of [a prisoner's] sentence."  *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).  It is undisputed that none of the disciplinary sanctions imposed upon Petitioner – class reduction and loss of privileges, with no accompanying loss of good time – had any effect on the duration of his term of confinement, as contemplated by *Sandin*.  Moreover, *Sandin* expressly recognized that disciplinary action by prison officials in response to a prisoner's misconduct "falls within the expected perimeters of the sentence imposed by a court of law."  *Id.* at 485. Adjustments in classification and temporarily restricted privileges as a means of punishment are certainly an expected component of prison life and do not "present a dramatic departure from the basic conditions of [an inmate's] sentence." *Id.  See Overton v. Bazzetta*, 539 U.S. 126, 137 (2003) (withdrawal of visitation privileges for limited period as means of effecting prison discipline is not dramatic departure from accepted standards for conditions of confinement); *Phillips*, 320 F.3d at 847 (exercise restriction for thirty-seven days is not atypical and significant hardship); *Kennedy v. Blankenship*, 100 F.3d 640, 642 n.2, 643 (8th Cir. 1996) (restrictions in mail, telephone, visitation, commissary and personal possessions privileges); *Madewell v. Roberts*, 909 F.2d 1203, 1207 (8th Cir. 1990) (ADC inmate has no right to consideration of Class I status); *Strickland v. Dyer*, 628 F. Supp. 180, 181 (E.D. Ark. 1986) (because Arkansas law does not protect a prisoner's right to any particular classification and there is no federally protected right regarding classification,

6

ADC prisoner could not prevail on claim that he was deprived of due process due to disciplinary penalty of two-step class reduction).

Furthermore, the indirect effect of Petitioner's disciplinary infractions – the termination of his work release participation – is not an unexpected consequence for violating prison rules, especially when the misconduct occurred in connection with his work release status.  It was not an atypical or significant deprivation for him to return to the conditions of confinement of the sentence originally imposed, the same conditions as those ordinarily experienced by a large number of inmates on a daily basis.  There is no indication in the record that the duration of his sentence was in any way affected by the revocation of his work release status.  Therefore, no state-created liberty interest was implicated under the standard of *Sandin*.  *See Callendar*, 88 F.3d at 668-70.

Because Petitioner did not have a protected liberty interest under either federal or state law in his classification level, in maintaining all prison privileges, or in his participation in rehabilitative or work release programs, his due process claims fail.

Even if Petitioner were entitled to procedural protections, the record shows that he was afforded adequate process.  To comport with due process where a protected liberty interest exists in connection with a prison disciplinary proceeding, a prisoner must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present a defense; and (3) a written statement of the evidence relied upon by the fact-finder and the reasons for the disciplinary action.  *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974); *see also Edwards*, 908 F.2d at 303 (holding that similar minimum due process requirements must be met before revoking participation in a work release program similar to parole).  Here, the disciplinary records reflect that Petitioner was notified of the disciplinary charges at 4:22 p.m. on August 3, 2007, four days after the incident date and

well before any hearing date  (doc. 9-2, at 1, 2).  He requested a copy of the allegedly forged signature and a witness statement from Edward Jetton, a Capitol Equipment supervisor (doc. 9-2, at 1, 2).  At 4:50 p.m. on August 3, 2007, an extension of the hearing date was granted, to expire on August 10, 2007, at 6:00 p.m., for the stated reason of collecting Petitioner's witness statement (doc. 9-5, at 2).  Petitioner was served with the extension form on August 7, 2007, at 1:20 p.m (doc. 9-5, at 1).  The disciplinary hearing was held at 9:25 a.m. on August 9, 2007 (doc. 9-3, at 1).  At the hearing, Petitioner pleaded not guilty to the charges and was allowed to make a statement  (doc. 9-3, at 1).  Petitioner's requested documents are part of the disciplinary record (doc. 9-2, at 4-7, 15).  The disciplinary hearing officer stated her factual basis for finding guilt as follows:

> Wells called the circuit clerk's office and spoke with Ms. Ronda DePriest about the filing of his petition of habeas corpus and a petition to proceed in forma pauperis or without costs, and also had a free-world employee of Capital Equipment "Terry" to deliver his legal paperwork to the circuit clerk's office.

(Doc. 9-3, at 2.)  The hearing officer stated that she was accepting the charging officer's report and also relying on a supporting statement from the Saline County Circuit Clerk (doc. 9-3, at 2; *see* doc. 9-2, at 10-12).  Petitioner fully utilized all levels of the administrative appeal process (doc. 9-4).  This was adequate to comport with *Wolff*'s requirements.

Petitioner submits portions of the ADC Inmate Discipline Manual stating that a charged inmate must be given a copy of any extension of time and that "[n]o disciplinary will be heard after five days (excluding weekends and holidays) from the time of the infraction or discovery of episode except pursuant to a valid extension."  He says the disciplinary expired August 6, 2007, at 3:00 p.m., and he was not provided with an

extension as required by ADC policy until August 7, 2007, when he appeared before a hearing officer.  He says, at that time, the officer continued the hearing to August 9, 2007. Contrary to Petitioner's contention, and as held by the ADC officials in his disciplinary appeal (doc. 9-4), nothing in these regulations requires that the inmate be served with a copy of the extension before expiration of the disciplinary.  Moreover, such a requirement is not an element of due process required by the United States Constitution or any relevant case law.

Petitioner's equal protection claim also fails because he has not demonstrated that similarly situated classes of inmates were treated differently, that any differential treatment bore no rational relation to a legitimate penal interest, or that he was subjected to intentional discrimination.  *Phillips*, 320 F.3d at 848.  Furthermore, the disciplinary sanctions did not violate the Eighth Amendment because they did not constitute unnecessary or wanton inflictions of pain, involve deprivations of "life's necessities," such as water, food or shelter, or amount to deliberate indifference to Petitioner's health or safety.  *Id.*

As to Petitioner's specific allegation that he was entitled to one hour of exercise, the temporary restriction of exercise privileges for disciplinary purposes does not constitute an atypical and significant hardship under *Sandin* or amount to deliberate indifference under the Eighth Amendment.  *See Phillips*, 320 F.3d at 847; *Leonard v. Norris*, 797 F.2d 683, 685 (8th Cir. 1986).

Respondent also argues for dismissal without prejudice due to non-exhaustion, Dismissal due to lack of merit is more efficient.  There is no need to make Petitioner jump through the state-court hoops to exhaust a non-viable federal claim.  *See* 28 U.S.C. §

2254(b)(2) (habeas application "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

### III.

Petitioner also filed a motion for summary judgment (doc. 12), asserting that he is entitled to judgment because Respondent failed to answer the petition in a timely manner. By order entered October 17, 2007, the Court directed Respondent to answer the petition within twenty days of service of the petition, exclusive of the day of service (doc. 6). The Clerk of the Court certified mailing the petition the same day (doc. 7).  *See* Fed. R. Civ. P. 5(b)(2)(C) (service by mail is complete upon mailing); Rule 11, Rules Governing § 2254 Cases in United States District Courts (applicability of Federal Rules of Civil Procedure in federal habeas proceedings).   When service is by mail, three days are added to the computation. Fed. R. Civ. P. 6(d).  Counting starts from the day after the mailing.  *Id.* 6(a). Respondent thus filed a timely response on November 8, 2007 (doc. 8).

### IV.

For the reasons set forth above, this 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 2) is dismissed in its entirety, with prejudice.  Petitioner's motion for summary judgment (doc. 12) is denied.

IT IS SO ORDERED this 6th day of May, 2008.

_____
UNITED STATES MAGISTRATE JUDGE